**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

MYRTA TORRES SANTIAGO, ET ALS.,

      Plaintiffs,

           v.                       CIV. NO. 06-1116 (PG)

MUNICIPALITY OF ADJUNTAS, ET ALS.,

      Defendants.

<u>OPINION AND ORDER</u>

    Pending before the Court are defendants' motion for attorney fees (Docket No. 209) and plaintiffs' opposition (Docket No. 211). After close examination of the record and the applicable statutory and case law, the Court **GRANTS IN PART** defendants' motion for attorney fees, for the reasons explained below.

**I. BACKGROUND**

    On January 30, 2006, plaintiffs Myrta Torres Santiago ("Torres"), Migdalia Rodriguez Rivera ("Rodriguez") and Jose Rivera del Valle ("Rivera") (hereinafter collectively referred to as "Plaintiffs") filed this action for injuctive relief and money damages against defendants the Municipality of Adjuntas ("the Municipality"); its mayor, Jaime H. Barlucea ("Barlucea"); Walver Baez ("Baez"); Daniel Portela ("Portela"); and, Hernan Caraballo ("Caraballo") (hereinafter collectively referred to as "Defendants"). This action is brought pursuant to the provisions of the Federal Civil Rights Act, 42 U.S.C.A. § 1983 ("Section 1983"), and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802").

    In the complaint, Plaintiffs alleged to be affiliated with the Popular Democratic Party ("PPD") and claimed that the individual defendants were affiliated with the New Progressive Party ("NPP"). Plaintiffs alleged they were illegally demoted and transferred from their jobs because of their political party affiliation and beliefs. As a result, Plaintiffs averred they had to endure inferior and unreasonable working conditions. According to Plaintiffs, Defendants' acts violated their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution and caused them damages.

On March 10, 2006, the Defendants moved to dismiss Plaintiffs' due process and equal protection claims pursuant to the Fifth and Fourteenth Amendments. The Court granted the Defendants' motion and thus dismissed Plaintiffs' due process and equal protection claims. See Docket No. 36. Thereafter, on November 12, 2009, the Court granted in part the Defendants' motion for summary judgment and dismissed the claims against co-defendants Baez, Portela, and Caraballo. The Court found that the Plaintiffs were unable to establish a *prima facie* case as to these three co-defendants. See Docket No. 168. The case, however, continued as to co-defendant Barlucea in both his personal and official capacity as mayor of the Municipality of Adjuntas. See Docket No. 168.

After various failed settlement attempts, the case went to trial and the jury found in favor of defendant Barlucea. Specifically, the jury found that both plaintiffs Torres and Rodriguez had failed to prove by a preponderance of the evidence that Barlucea had knowledge of their political affiliation. Although plaintiff Rivera was able to establish this threshold fact, the jury found, however, that he had failed to prove by a preponderance of the evidence that Rivera's political affiliation was a substantial or motivating factor in the employment actions as to Rivera. In addition, with regards to Plaintiffs' state law claim under Article 1802, the jury found that all Plaintiffs were unable to establish that they suffered damages caused by the fault or negligence of defendant Barlucea. See *Jury Verdict*, Docket No. 20.

The Defendants now request reimbursement for part of the legal representation costs incurred in the litigation pursuant to 42 U.S.C. § 1988 by arguing that they are the prevailing parties and that the present claim was frivolous, unreasonable, or without foundation. See Docket No. 209. The Plaintiffs oppose their request. See Docket No. 211.

## II. DISCUSSION

**A.   The Civil Rights Attorney's Fees Awards Act**

"Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." Id. Therefore, in any action enforcing the provisions of Section 1983, such as the instant one, 42 U.S.C. § 1988(b) governs attorney fee awards.

Section 1988(b) states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). In adjudicating a request for attorney fees, the Court needs to determine whether: (1) a party is in fact a "prevailing party"; (2) the compensation sought is reasonable (i.e. calculation of the lodestar); and (3) there are any additional but exceptional considerations that may require to adjust upward or downward. See Hensley, 461 U.S. at 433-34. Once a prevailing party comes across this threshold, the district court must then determine what fee is reasonable. See id. at 433.

Notwithstanding the discretionary language of the statute, "[i]n civil rights cases, fee-shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a prevailing defendant is the exception." Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir.1994). However, "[a] triumphant defendant may qualify as a prevailing party for the purpose of obtaining a fee award." Maine School Administrative Dist. No. 35 v. Mr. R., 321 F.3d 9, 16 (1st Cir.2003) (quoting Weyant v. Okst, 198 F.3d 311, 316 (2d Cir.1999); Burke v. Guiney, 700 F.2d 767, 771 (1st Cir.1983)). "It follows inexorably that a defendant who prevails on the only claim that justifies the presence of the case in a federal court has a legitimate basis for asserting that she is the prevailing party." Maine School, 321 F.3d at 16 (citing Perlman v. Zell, 185 F.3d 850, 859 (7th Cir.1999)).

The First Circuit Court of Appeals has noted, nevertheless, that in cases under § 1988, "decisions to grant defendants their fees are, and should be, rare." Bercovitch v. Baldwin School, Inc., 191 F.3d 8, 11 (1st Cir.1999) (citing Tang v. Rhode Island, Dep't of Elderly Affairs, 163 F.3d 7, 13 (1st Cir.1998)). Accordingly, it has been found that a defendant is entitled to fees "only if [the defendant] can establish that the plaintiffs' suit was totally unfounded, frivolous, or otherwise unreasonable," Casa Marie Hogar Geriatrico, Inc., 38 F.3d at 619 (internal citations omitted), "or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422 (1978). As a result, "[p]revailing defendants, under this heightened standard, have a more difficult showing to make to obtain attorney's fees than do successful plaintiffs." Bercovitch, 191 F.3d at 10.

In applying this criteria, the Supreme Court mandates that a district court considering a fee request from a prevailing defendant should "resist the

understandable temptation to engage in *post hoc* reasoning by concluding that, because the plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." <u>Christiansburg Garment</u>, 434 U.S. at 421-22. To this extent, the Supreme Court has further stated that:

> This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

<u>Id.</u> at 422.

The Defendants here seek an award of attorney fees pursuant to Section 1988 asserting that they were the prevailing parties in Plaintiffs' civil rights action. In their opposition, the Plaintiffs do not contest that the Defendants are in fact the prevailing party, thus, the only question that remains is whether or not the Defendants have established that the Plaintiffs' suit was totally unfounded, frivolous or otherwise unreasonable.

Determinations regarding frivolity are to be made on a case-by-case basis and some important factors to be considered include: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." <u>Sullivan v. School Bd. of Pinellas County</u>, 773 F.2d 1182, 1189 (11th Cir.1985) (internal citations omitted). "Cases where findings of "frivolity" have been sustained typically have been decided in the defendant's favor on a motion for summary judgment … . In these cases, the plaintiffs did not introduce any evidence to support their claims." <u>Id.</u> (internal citations omitted). "In cases where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand." <u>Id.</u> (internal citations omitted). Notwithstanding the foregoing, even if a prevailing defendant can establish that a plaintiff's suit was frivolous, the district court still retains the discretion to deny fees to a prevailing defendant. <u>See</u> <u>Rossello-Gonzalez v. Acevedo-Vila</u>, 483 F.3d 1, 6 (1st Cir.2007) (internal citations omitted). "The district court must not subject the plaintiff to financial ruin, but it must fulfill the deterrent purpose of § 1988 in discouraging plaintiffs from bringing frivolous

claims." Santiago-Perez v. State Ins. Fund Corp., 534 F.Supp.2d 242, 244 (D.P.R. 2008) (quotation marks and citations omitted).

     In the instant Section 1983 action, this Court granted summary judgment in favor of co-defendants Baez, Portela and Caraballo on the merits, and thus, dismissed the federal causes of action against them with prejudice. See Opinion and Order of November 12, 2009, Docket No. 168. Defendants allege that the court should award them attorney fees because Plaintiffs were aware that their claims against these defendants lacked merit. Yet, the Plaintiffs pursued their actions against these co-defendants thus multiplying the costs of litigation. The Court agrees. After reviewing the evidence submitted at the motion for summary judgment stage, the Court found that the Plaintiffs were unable to establish a prima facie case against them because Baez belonged to the same political party as Plaintiffs and because Plaintiffs were unable to establish any involvement on the part of Portela and/or Caraballo with respect to the alleged adverse employment actions complained of. See id.

     With regards to co-defendants Barlucea and the Municipality, the Plaintiffs argue that the fact that they survived summary judgment with respect to these co-defendants demonstrates that their claims against them were valid and not vexatious or frivolous. However, the Court disagrees. Applying the Sullivan factors enumerated above, we would be forced to conclude that the Plaintiffs' action against Barlucea and the Municipality were not frivolous inasmuch as they were able to establish a prima facie case at the summary judgment stage, the Defendants offered settlement and a full-blown trial on the merits was seen as to these two co-defendants. However, "[c]ases that are ultimately viewed as frivolous may well survive motions to dismiss under a system of notice pleading that does not require factual detail and even motions for summary judgment in which the evidence may be presented in sketchy fashion and credibility may not be taken into account." Greenberg v. Hilton Intern. Co., 870 F.2d 926, 940 (2nd Cir.1989). The Court first notes that the only reasons the Plaintiffs survived summary judgment were that, pursuant to the applicable standard, the Court could not make credibility determinations and the evidence had to be examined in the light most favorable to the Plaintiffs. See Docket No. 168 at pages 16-17. The Plaintiffs must have known that they would not be afforded such indulgence at trial and to the extent they refused to accept a sound settlement offer prior to the commencement of the jury trial, see Docket No. 187, the Court finds that the Plaintiffs' claim became unreasonable thereon.

Pursuant to the foregoing, the Court finds that Defendants, as the prevailing parties in the instant claim are entitled to attorney fees. Accordingly, we shall now move on to the second part of the inquiry: whether the compensation sought is reasonable.

Here, the Plaintiffs failed to oppose the Defendants' fee calculations. However, this does not relieve the Court of its duty of making sure that the amount requested by Defendants is reasonable. To determine a reasonable amount of attorney fees, courts in this Circuit apply the "lodestar" approach, first calculating the prevailing hourly rate and then time spent performing the various legal tasks, finally subtracting those which are excessive, duplicative, or unnecessary. See Tejada-Batista v. Fuentes-Agostini, 263 F.Supp.2d 321, 326-27 (D.P.R. 2003); see also Gay Officer Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001).

## 1. Fee Calculation

Under 42 U.S.C. § 1988, a trial court generally should employ the lodestar method to calculate fees. See Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir.2007). Under this method, "the court must determine the hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." Tejada-Batista, 263 F.Supp.2d at 326 (citing Gay Officers Action League, 247 F.3d at 295). A court usually should begin with the attorneys' contemporaneous billing records. See Gay Officers Action League, 247 F.3d at 295. "In fashioning the lodestar, a district court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir.2008) (internal citations omitted). "Subject to principles of interconnectedness, … , the court may disallow time spent in litigating failed claims." Id. (citing Lipsett v. Blanco, 975 F.2d 934, 940-41 (1st Cir.1992)).

Nevertheless, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward … ." Hensley, 461 U.S. at 434. The court may then adjust the award further for several reasons, such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir.1974); see also Hensley, 461 U.S. at 434 n. 9, Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 n. 3 (1st Cir.1997).

In addition, "[w]here the plaintiffs have prevailed over more than one defendant, the court must take an additional step: it must determine whether the fee award should run jointly and severally against the defendants or, if not, what portion of the award each defendant should bear." O'Neill-Cancel, 524 F.3d 331, 337 (internal citations and quotation marks omitted). It follows then, that when defendants prevail over multiple plaintiffs, the court must take the same step.

> In cases in which apportionment is the preferred option, there is no uniform prescription as to how to effect that result. Rather, a district court … must choose among a variety of modalities. These modalities include equal division among the [losing parties], division by relative liability, and division by assignment of the time reasonably expended in litigating against each defendant. … The appropriate choice among these modalities depends on the contours and idiosyncrasies of the particular case. … The guiding principle is equity; the district court should strive to determine the most fair and sensible solution for apportioning the fee award.

Id. (internal citations and quotation marks omitted). Finally, in order to receive the proper award of attorney fees, a prevailing party must submit with its motion evidence to support the number of hours and rates sought, and show that the rates being sought are comparable to those in the community. See Hensley, 461 U.S. at 433.

### a. Hourly Rate

In their memorandum in support of attorney fees (Docket No. 209), Defendants argue that the rates charged by their attorneys are reasonable considering the attorneys' experience. Specifically, Defendants seek an hourly rate of $100 for attorney Patricia Limeres-Vargas and a rate of $125 per hour for attorney Luis R. Perez-Giusti.[1]

---

[1]Pursuant to their motion, Perez-Giusti is a 1991 graduate of Georgetown Law Center's LLM program and Limeres-Vargas graduated from the University of Puerto Rico School of Law in 2003.

The lodestar method requires that the hourly rate used by the Court be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Tejada-Batista, 263 F.Supp.2d at 327 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). "In reaching its determination, the court may rely upon its own knowledge of attorneys' fees in the community." Rodriguez v. International College of Business and Technology, Inc., 356 F.Supp.2d 92, 96 (D.P.R.2005) (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989)). In the fee-shifting context, a district court's primary concern is with the market value of counsel's services. See United States v. One Star Class, 546 F.3d 26, 28 (1st Cir.2008); see also In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 568 (7th Cir.1992). Thus, the rate that private counsel actually charges for his/her services, while not conclusive, is a reliable indicium of market value. See One Star Class, 546 F.3d at 28. Once this so-called "lodestar" figure is established, the court has the discretion in "cases of exceptional success" to make an enhanced award. See Hensley, 461 U.S. at 435. Accordingly, the "resulting "lodestar" amount may be adjusted for any of several reasons, including the quantum of success achieved in the litigation." Bogan, 489 F.3d at 426 (citing Coutin, 124 F.3d 331, 337 n. 3 (1st Cir.1997)).

After reviewing the relevant records submitted by Defendants' attorneys, this Court finds that, all of the fee applicants' hourly rates are in-line with the prevailing rates in the community. See Guillemard-Ginorio v. Contreras, 603 F.Supp.2d 301 (D.P.R. 2009) (finding reasonable hourly rates of $175 and $155 for attorneys with 18 and 10 years of experience, respectively); International College of Business and Technology, Inc., 356 F.Supp.2d 92, 96-97 (D.P.R. 2005) (finding rate of $190 and $125 to be appropriate); Top Entertainment Corp. v. Torrejon, 349 F.Supp.2d 248, 253-255 (D.P.R. 2004) (finding hourly rate of $125.00 reasonable); Anywhere, Inc. v. Romero, 344 F.Supp.2d 345, 348 (D.P.R. 2004) (finding that an hourly rate of $250.00 for the more experienced attorney and of $150.00 for the less experienced attorneys reasonable)

### b. Timesheets

The second part of the lodestar calculation involves the number of hours for which the attorneys seek compensation.

> The district court … should exclude from this initial
> fee calculation hours that were not "reasonably
> expended." … Cases may be overstaffed, and the skill
> and experience of lawyers vary widely. Counsel for the

> prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission …. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

Hensley, 461 U.S. at 434.

"In order to recover fees, attorneys must submit a full and precise accounting of their time, including specific information about number of hours, dates, and the nature of the work performed." Deary v. City of Gloucester, 9 F.3d 191, 197-198 (1st Cir.1993)(internal citation omitted). The problem with entries containing only "gauzy generalities" is that "they fail to allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." Lipsett, 975 F.2d at 938 (internal citations and quotation marks omitted). First Circuit Court case law "make[s] clear that prevailing parties who intend to seek counsel fee awards ordinarily must ensure that contemporaneous time records are kept in reasonable detail … . [First Circuit Court] precedents warn that failure to do so may have deleterious consequences (such as the slashing or disallowance of an award)." Gay Officers Action League, 247 F.3d at 297 (citing Lipsett, 975 F.2d at 938; Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir.1984)). After review of the records provided by the Defendants' attorneys, the Court finds that their submissions are adequately detailed.

In addition, it is well-established that awards under Section 1988 "are not intended to serve as full employment or continuing education programs for lawyers and paralegals," Gay Officers Action League, 247 F.3d at 297 (internal citations omitted). "As a general matter, the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted. … A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." Lipsett, 975 F.2d at 938 (internal citations omitted). Therefore, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." Id.

Notwithstanding, "[t]ime spent by two attorneys on the same general task is not, however, per se duplicative." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir.1998). "Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic. … Effective preparation and presentation of a case often involve the

kind of collaboration that only occurs when several attorneys are working on a single issue." <u>Gay Officers Action League</u>, 247 F.3d at 297 (internal citations omitted). In this analysis, "staffing issues are often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncracies." <u>Lipsett</u>, 975 F.2d at 939.

In the case before the Court, there are two attorneys on record on behalf of Defendants. Although the Court finds that the case was certainly not overstaffed, we will discount a total of four (4) hours from the hours billed by attorney Limeres-Vargas on June 27, 2007 inasmuch as the Court finds that the presence of one attorney at the status conference of same date would have sufficed.

Furthermore, in determining the reasonableness of the prevailing party's request, this Court finds that "[w]hether time billed by [the prevailing party] is excessive or unproductive must be determined in light of how aggressively the [opposing party] has argued its case." <u>Quint v. A.E. Staley Mfg. Co.</u>, 245 F.Supp.2d 162, 179 (D.Me.2003) (internal citations omitted). "Careful preparation often requires collaboration and rehearsal. … [B]ecause a litigant's staffing needs and preparation time will often vary in direct proportion to the ferocity of [its'] adversaries' handling of the case, this factor weighs heavily in the balance." <u>Rodriguez-Hernandez</u>, 132 F.3d at 860 (<u>citing</u> <u>Lipsett</u>, 975 F.2d at 939).

In this case, the record reveals that the Plaintiffs' litigation style was aggressive to some extent. We need not restate the procedural background of this case. The docket report speaks for itself. During the course of this litigation, Plaintiffs displayed undue resistance during the discovery process that resulted in this Court having to threaten with sanctions (Docket No. 144). On occasions, the Plaintiffs rehashed arguments in motions that had already been rejected by the Court. Their behavior, thus, delayed the progress of this litigation.

Finally, we must consider if there is any reason to adjust the requests downward or upward. Adjustments are made only in unusual circumstances. However, a reduction for time spent on unsuccessful claims or redundant or excessive hours is appropriate. See <u>Williams v. Hanover Housing Authority</u>, 113 F.3d 1294, 1301 (1st Cir.1997).

In the instant case the Court finds that the hours spent by attorney Limeres-Vargas drafting the motion for summary filed in this case were excessive, and thus, the Court will reduce thirty-five (35) hours to the over

one hundred and fifty (150) hours spent on this task. Other than this reduction, the Court concludes that the Defendants' degree of success was substantial and finds no justification for further reducing the fees based on the over all relief obtained.

### c. Allocation

We must now determine the amount of attorney fees each plaintiff is responsible for. However, because we find it would be an impossible task for this Court to determine how many hours were expended litigating against each plaintiff, the Court will divide the total amount equally among the losing parties as the means of effectuating the apportionment.

Therefore, after the deductions and adjustments discussed above, the computation of the total legal fees to be awarded to Defendants is as follows:

|                   | LPG        | PLV        |
|-------------------|------------|------------|
| Hours             | 156.5      | 402.25     |
| Rate              | $125.00    | $100.00    |
|                   | $19,562.50 | $40,225.00 |
| **TOTAL**         | **$59,787.50** |        |
| *(per plaintiff)* | *$19,929.17* |          |

### III. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS IN PART** Defendants' motion for attorney fees (Docket No. 209). Defendants are thus awarded **$59,787.50** in legal fees.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 7, 2010.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE